# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Edward McGrath,  Civil File No. 10-4192 (ADM/SER)

    Plaintiff,

v.  **REPORT AND RECOMMENDATION**

Michael J. Astrue,
Commissioner of Social Security,

    Defendant.

---

    Lionel H. Peabody, Esq., Peabody Law Office, P.O. Box 10, Duluth, MN, 55801-0010 on behalf of Plaintiff.

    Lonnie F. Bryan, Esq., Office of the United States Attorney, 300 South 4th Street, Suite 600, Minneapolis, Minnesota 55415, on behalf of Defendant.

---

STEVEN E. RAU, United States Magistrate Judge.

    This matter is before the undersigned United States Magistrate Judge on Plaintiff's Application for Attorney's Fees and Costs Under the Equal Access to Justice Act ("EAJA") [Doc. No. 25] pursuant to 28 U.S.C. § 2412(d). It has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and District of Minnesota Local Rule 72.1. For the reasons set forth below, the Court recommends that the Application be granted.

## I.    FACTS AND PROCEDURAL HISTORY

    Plaintiff Edward McGrath originally applied for DIB and SSI on November 4, 2005, alleging disability due to acute depression, anxiety, and alcoholism as of December 31, 2000. (Admin. R, 88-95, 122) [Doc. No. 6]. McGrath's application was denied both initially and on

reconsideration. (*Id.* at 51-60, 64-69). A hearing before an Administrative Law Judge (ALJ) was held on July 15, 2008. The ALJ issued an unfavorable decision on January 8, 2009. (*Id.* at 16-29). The Appeals Council denied McGrath's request for further review on September 24, 2010. (*Id.* at 7-15, 1-5).

Seeking judicial review of the final decision of the Commissioner, McGrath filed the instant action on October 12, 2010. [Doc. No. 1]. McGrath filed a motion for summary judgment on February 16, 2011. [Doc. No. 10]. In response, the Commissioner also filed a motion for summary judgment on April 18, 2011 [Doc. No. 16].

After considering the parties' arguments, on January 24, 2012, this Court issued a Report and Recommendation recommending the case be remanded for reversal and award of benefits. [Doc. No. 20]. The Commissioner filed an objection to the Court's Report and Recommendation on February 2, 2012. [Doc. No. 21]. On March 23, 2012, United States District Court Judge Ann D. Montgomery sustained the Commissioner's objections in part, and overruled them in part. The Court held that the ALJ's "failure to develop the facts was prejudicial to McGrath as he may be entitled to benefits if he meets Listing 12.04's C criteria." (Mem. Op. and Order) [Doc. No. 23 at 20]. Judge Montgomery remanded the case to the Commissioner for further proceedings. (*Id.*) This type of outcome is commonly known as a "sentence-four" remand, since it is authorized by sentence four of 42 U.S.C. § 405(g):

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

Pursuant to the EAJA, McGrath filed this petition for attorney's fees and expenses on June 21, 2012. (Appl. for Atty's Fees and Costs under the Equal Justice Act, "Application for Fees") [Doc. No. 26]. In his petition, McGrath's counsel seeks compensation for 32.7 hours

expended in this case, at a rate of $170 per hour. These fees total $5,559.00. The Commissioner opposed the award of fees, and argues that even if fees are awarded, they should go to McGrath, not his attorney, per the EAJA and the Anti-Assignment Act ("AAA"), 31 U.S.C §3727(b). (Def.'s Resp. to Pl.'s Appl. for Atty's Fees Under the Equal Access to Justice Act, "Defendant's Response") [Document 28 at 5]. McGrath also requests an additional amount of $1,377.00, to compensate him for the 8.1 hours he spent preparing a reply to the Commissioner's objection. (Reply to Def.'s Resp. to Pl.'s Appl. for EAJA Fees "Plaintiff's Reply") [Doc. No. 29 at 12-13]. McGrath's fees request therefore comes to a grand total of $6,936.00.

## II.     DISCUSSION

This Report and Recommendation will first address the issue of whether McGrath is a prevailing party for the purposes of the EAJA, and relatedly, whether the Commissioner's position was substantially justified under the EAJA. Finally, it will address the issue of whether the EAJA precludes the direct payment of any EAJA fees to McGrath's counsel.

### A. McGrath is a prevailing party under the EAJA.

The EAJA provides in relevant part:

> [A] court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

Initially, a plaintiff bears the burden to establish that he or she was a "prevailing party" under the EAJA. *Huett v. Bowen*, 873 F.2d 1153, 1155 (8th Cir. 1989) (*per curiam*); *Moala v. Astrue,* No. 06cv1531 JNE/SRN, 2008 WL 508501, *2 (D. Minn. Feb. 21, 2008). A sentence-four remand makes a plaintiff a "prevailing party" under the EAJA. *Shalala v. Schaefer*, 509

U.S. 292, 300-301 (1993). In this case, the Court granted McGrath's request for rehearing and remand on the issue of the ALJ's failure to develop the facts related to McGrath's episodes of decompensation. McGrath is a "prevailing party" under *Schaefer*; moreover, the Commissioner does not challenge McGrath's status as a prevailing party.

> **B. The Commissioner's Success on Several of His Arguments Does Not Indicate His Overall Position Was Substantially Justified.**

Once a plaintiff establishes prevailing party status, it is the Commissioner's burden to prove that his position was substantially justified. *See, e.g., Scarborough v. Principi*, 541 U.S. 401, 414-15 (2004) ("The burden of establishing 'that the position of the United States was substantially justified' . . . must be shouldered by the Government."); *Bah v. Cangemi*, 548 F.3d 680, 684 (8th Cir. 2008) (citing *Friends of the Boundary Waters Wilderness v. Thomas*, 53 F.3d 881, 885 (8th Cir. 1995). This burden requires the Commissioner to show that his "position was substantially justified at both the administrative and litigation levels." *Gowen v. Bowen*, 855 F.2d 613, 615 (8th Cir. 1988) (citing 28 U.S.C. § 2412(d)(2)(D)). A position is substantially justified if "the denial had a reasonable basis in law and fact." *Welter v. Sullivan*, 941 F.2d 674, 676 (8th Cir. 1991) (citation omitted). A "substantially justified" position need not be correct so long as "a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Bah*, 548 F.3d at 683-84 (citing *Pierce v. Underwood,* 487 U.S. 552, 565-566 (1988)); *Welter,* 941 F.2d at 676 (8th Cir. 1991).

Substantial justification is different from—and should not be equated with—the substantial evidence standard courts apply when reviewing a disability claim. As the Eighth Circuit explained:

> Under the substantial evidence standard, the district court must consider evidence that both supports and detracts from the Secretary's position. In contrast, under the substantial justification

4

standard the district court only considers whether there is a reasonable basis in law and fact for the position taken by the Secretary. Because the standards are neither semantic nor legal equivalents, the Secretary can lose on the merits of the disability question and win on the application for attorney's fees."

*Welter*, 941 F.2d at 676. (Internal citations omitted).

The Commissioner contends that because only one issue was remanded, his position was substantially justified. (Def.'s Resp. at 3). Though this standard demands less than the substantial evidence standard under *Welter*, the Commissioner must establish that the ALJ's failure to develop the facts related to McGrath's episodes of decompensation was reasonable in order to rebut McGrath's claim for fees incurred in this action. As set forth below, the Commissioner has not met this burden.

A plaintiff need not prevail on every issue in order to receive an award of fees. In *Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983), the Supreme Court addressed the propriety of reducing a plaintiff's fee award under the Civil Rights Attorney's Fees Awards Act. The Court held that a "fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit . . . [T]he court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Id.* at 435. "Lawsuits usually involve many reasonably disputed issues and a lawyer who takes on only those battles he is certain of winning is probably not serving his client vigorously enough; losing is part of winning." *Jenkins by Jenkins v. State of Mo.*, 127 F.3d 709, 718-19 (8th Cir. 1997) (citing *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991)).

The Commissioner argues that "the single issue necessitating remand was not so pervasive as to render the Commissioner's overall position unreasonable." (Def.'s Resp. at 1). Though McGrath did not succeed on all of his arguments, this fact alone does not mean that the

5

Commissioner's position was substantially justified in the totality of the circumstances. Simply because "the government may have prevailed upon most of the issues raised by plaintiff does not mean that the government's position was 'substantially justified' if the government's position was unreasonable as to the issue" that necessitated remand. *Wait v. Astrue*, 495 F. Supp. 2d 1131, 1133 (D. Kan. 2007).

Various courts have held that even where the Commissioner prevailed on some of issues, the Commissioner's position may not be substantially justified in the totality of the circumstances if the Commissioner's position was unreasonable as to the issue requiring remand. *See e.g. Hackett v. Barnhart*, 475 F.3d 1166, 1174 n. 1 (10th Cir. 2007); *Loomis v. United States*, 74 Fed. Cl. 350, 353-54 (Ct. Fed. Cl. 2006); *Wait,* 495 F. Supp. 2d at 1133 (D. Kan. 2007); *Rodgers v. Astrue*, 09cv1214 DWF/SER, 2011 WL 721528 at *3 (D.Minn. Feb. 3, 2011); *Halverson v. Astrue*, 08cv784 JNE/SRN, 2009 WL 2256380 at *4 (D. Minn. July 28, 2009); *Woods v. Barnhart*, No. 06-1619, 2008 WL 2782735, *3 (D. Colo. July 8, 2008).

In this case, the issue triggering remand was the ALJ's failure to adequately develop the record regarding McGrath's contention that he meets Listing 12.04's C criteria. In Social Security cases, the ALJ has a duty to fully develop the record and seek clarification if a crucial issue is underdeveloped. *See Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) (noting that "well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of claimant's burden to press his case."); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) (holding that the ALJ has a duty to fully develop the record regarding the claimant's impairments). In the context of motions for EAJA fees, courts have found that the Commissioner is not substantially justified when he fails to develop the record fully. *See Dini v. Astrue*, No. 08cv5852 DSD/JJG, 2010 WL 153681 at *2 (D. Minn. Jan. 11, 2010). The

Commissioner did not adequately explore McGrath's claim that he meets Listing 12.04's C criteria, so he was not substantially justified on that issue. Accordingly, the Court recommends EAJA fees be awarded to McGrath.

Having determined that an award of attorney's fees is appropriate, the Court next turns to the amount of fees to be awarded to the Plaintiff. Plaintiff asks for fees based on a $170.00 hourly rate. Generally, attorney fees may not exceed the rate of $125.00 per hour "unless the court determines that an increase in the cost of living . . . justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). The Commissioner does not challenge the requested hourly rate of $170.00. Additionally, the Court finds that the increase in the cost of living based on the Consumer Price Index and the counsel's customary rate of $170.00-$267.00 justifies an hourly rate of $170.00. (Decl. of Lionel H. Peabody) [Doc. No. 27 at 1-2]. The Commissioner does not challenge the number of hours Plaintiff's counsel billed, which total 32.7 for the initial appeal and an additional 8.1 for preparation of Plaintiff's Reply. Therefore, the Court recommends that Plaintiff receive a total award of $6,936.00 in attorney's fees and costs.

### C. McGrath's Request to Remit EAJA Fees to his Counsel is Valid

McGrath asks the Court to order the Commissioner to pay any EAJA award directly to his attorney. (Appl. for Fees at 2). Under *Astrue v. Ratliff*, 130 S.Ct. 2521 (2010), EAJA fee awards must be paid to the "prevailing party"—meaning the claimant, not his counsel. *Id.* at 2525-26. The Commissioner argues that McGrath's request that the government pay any EAJA award to his counsel is void under the AAA, 31 U.S.C. § 3727(b). (Def.'s Resp. at 5). The AAA states, in pertinent part, that "[a]n assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued." 31 U.S.C. § 3727(b).

In this District, there is no consensus as to how to treat requests like McGrath's. Several judges have ruled that the government may award EAJA fees to an attorney at the request of a claimant. *See Dornbusch v. Astrue*, No. 09cv1734 PJS/JJG, 2011 WL 779781, at *1 (D. Minn. Mar. 1. 2011) (holding that by honoring claimant's instruction to assign EAJA fees, the Court was recognizing that the fee belonged to claimant); *Meyer v. Astrue*, No. 09cv3205 MJD/LIB, 2011 WL 4036398, at *3 (D. Minn. Aug. 25, 2011) (awarding EAJA fees to attorney where Government brief did not object to same). Other judges have held that the AAA prohibits this practice. *See, e.g.*, *Nelson ex rel M.K.N.B. v. Astrue*, No. 10cv4001 JNE/TNL, 2011 WL 6987176, at *4 (D. Minn. Dec. 23, 2011) (holding that fees are awarded to plaintiff and assignment of fees is a contract issue over which Court has no jurisdiction); *Vossen v. Astrue*, No. 07cv1567 PAM/LIB, 2011 WL 1322099, at *2 (D. Minn. Apr. 27, 2011) (holding that court will not *sua sponte* waive the AAA).

With no clear consensus in this District, some inquiry into the history and purpose of the AAA is worthwhile. The Act goes back as far as 1853, when Congress enacted what was then termed "An Act to prevent frauds upon the Treasury of the United States." *United States v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 373 (1949).

> Its primary purpose was undoubtedly to prevent persons of influence from buying up claims against the United States, which might then be improperly urged upon officers against the Government. Another purpose . . . was to prevent possible multiple payment of claims, to make unnecessary the investigation of alleged assignments, and to enable to Government to deal only with the original claimant.

*Id.* (internal citations and footnote omitted). The AAA seeks to prohibit factual scenarios like that of *United States v Shannon*, 342 U.S. 288 (1952), in which the respondent voluntarily purchased a claim against the Government, which he hoped to prosecute to his own financial advantage. *Shannon*, 117 U.S. at 292. In other words, Congress sought to eliminate the

uncertainty inherent in dealing with multiple claimants, litigants, and assignees. *See Hobbs v. McLean*, 117 U.S. 567, 576 (1886).

The Commissioner's reasoning does not square with the purpose of the AAA as set out by the Supreme Court in *Aetna*. An agreement between a Social Security claimant and his attorney regarding the disposition of EAJA fees does not create the kind of chaotic uncertainty for the Government that could result in "possible multiple payment of claims," or cumbersome investigations into the true identity of the claimant. *Aetna Cas. & Sur. Co.*, 338 U.S. at 373. To the contrary, it ensures that the attorney is part of the entire Social Security application process and has incentive to work with his client for a successful result. Nor has McGrath's counsel "purchased" McGrath's Social Security claim, as in *Shannon*.

The better framework to understand McGrath's request is outlined in *First Federal Savings & Loan Ass'n of Rochester v. United States*, 58 Fed. Cl. 139 (2003). In that case, the Court of Federal Claims distinguished between the right to **present a claim** against the Government and the right to the **proceeds of a claim**. The court held where an assignment merely created contract rights between a plaintiff and a third party, there was no right to recover against the United States. *Id.* at 157 (citing *Dorr-Oliver, Inc. v. United States*, 193 Ct.Cl. 187 (1970)). The facts here align with *First Federal*. "Arrangements between non-governmental parties concerning payment of litigation costs and distribution of any recovery is a private matter between the parties, not a contravention of [the AAA]." *Id.* at 157. McGrath's counsel has not attempted to replace McGrath as the claimant, nor has he purchased the claim from his client. He is simply designated as the person to whom McGrath wishes his EAJA fee to be paid.

The Commissioner relies in large part on *Ratliff* to support his contention that McGrath's EAJA fees award cannot be remitted to his attorney. It is true that under the holding of *Ratliff* a

9

prevailing party, not his attorney, receives the EAJA award. But assignments of EAJA fees did not trouble the Supreme Court in *Ratliff*. In fact, the Court acknowledged that the Government frequently paid EAJA fees awards directly to attorneys in Social Security Act cases in which the prevailing party had assigned her rights in the award to the attorney. *Ratliff*, 130 S.Ct. at 2529.[1]

The Commissioner fails to explain how McGrath's EAJA fee arrangement can be distinguished from other contingent-fee agreements in claims against the Government. Here, as in those situations, the client promises his attorney some portion of the outcome of the litigation, whether it is a fraction of the claim or the value of the EAJA award. There are several Supreme Court holdings that distinguish these fee agreements from an actual assignment of rights to a claim. A contingent-fee agreement "[does] not give the attorney any interest or share in the claim itself, nor any interest in the particular money paid over to the claimant by the government" but only establishes "an agreed basis . . . as to the attorney's compensation." *Nutt v. Knut*, 200 U.S. 12, 21 (1906). The Supreme Court held in *Wright v. Tebbitts* that a attorney's contingent-fee arrangement is no "claim upon the fund: he only asks that he may be paid . . . for his services after the money has been collected, and in accordance with the stipulations of the contract or memorandum." 91 U.S. 252, 253 (1875). The Supreme Court has also explained that such contracts are legal. "[C]ontracts by attorneys for compensation in prosecuting claims against the United States were not void because the amount of it was made contingent upon success." *Taylor v. Bemiss*, 110 U.S. 42, 45 (1884).

Indeed, the Supreme Court has recognized that the Social Security Act has no "design to prohibit or discourage attorneys and claimants from entering into contingent-fee agreements."

---

[1] The claimant in *Ratliff* had made no such assignment. In that case, claimant prevailed on an unopposed motion for EAJA fees. Before paying the fees, however, the Government discovered that claimant owed a debt to the United States Treasury. The Government sought to recover the debt, and claimant's attorney (Ratliff) intervened to challenge the offset. *Ratliff*, 130 S.Ct. at 2525.

*Gisbrecht v. Barnhart*, 535 U.S. 789, 790 (2002). The Social Security Act explicitly authorizes contingent-fee representation. 42 U.S.C. § 406(b)(1)(A) (a court may allow a reasonable fee "not in excess of 25 percent of the total past-due benefits to which the claimant is entitled by reason of such judgment"). Nor is this practice unique to the Social Security arena; contingent-fee arrangements are also used in other situations where claimants seek benefits from the government, such as veterans' benefits. 38 U.S.C. 5904(a)(5). It is illogical for the Commissioner to argue that the AAA forbids McGrath's EAJA fee agreement, while ignoring the contingent-fee agreements permitted by 42 U.S.C. § 406(b)(1)(A), 38 U.S.C. 5904(a)(5) and similar statutes. If the Commissioner's reading of the AAA were correct, both McGrath's EAJA fee agreement and his assignment of 25% of past-due benefits would be illegal, since they are assignments made before a claim is allowed and the amount of the claim is decided.[2]

The Commissioner's argument also conflicts with the EAJA's goal of diminishing "the deterrent effect of seeking review of, or defending against, governmental action by providing in specified situations an award of attorney fees . . . against the United States." Equal Access to Justice Act, Pub. L. No. 96-481, § 202(c)(1), 94 Stat. 2321, 2325 (1980). Nullifying fee agreements like McGrath's has the practical effect of inhibiting attorneys from undertaking Social Security cases. To read the AAA as prohibiting these fee agreements, as the Commissioner argues, is nonsensical when read alongside the law's stated intent.

The Court agrees with the Commissioner that under *Ratliff*, EAJA awards must be paid to the "prevailing party." 130 S.Ct. at 2525-26. It does not follow that the prevailing party has no

---

[2] The Commissioner may contend that the Government "may, if it chooses . . . waive the AAA and recognize the assignment of a claim against the United States." *Kawa v. United States*, 86 Fed. Cl. 575, 591 (2009) (citing *Delmarva Power & Light Co. v United States*, 542 F.3d 889, 893-94 (Fed. Cir. 2008). However, this very recent case is the first time the concept of waiver of the AAA has arisen. In contrast, the contingent-fee language in 42 U.S.C. § 406 traces its heritage to 1968, when Congress amended 42 U.S.C. § 406(a) to permit paying attorney's fees. Social Security Amendments of 1967, Pub. L. 90-248, 173, 81 Stat. 877.

right to contract with his attorney regarding payment for representation. The Court acknowledges that fees recovered pursuant to the EAJA are subject to federal administrative offset if the prevailing party has outstanding debts to the federal government. *Ratliff*, 130 S.Ct. at 2527; 31 U.S.C. §§ 3711(a), 3716(a) (authorizing a federal agency whose debt-collection efforts are unsuccessful to "collect the claim by administrative offset"). To ensure that the federal administrative offset inquiry can occur, the Court recommends the Commissioner be granted sixty days to determine whether any portion of McGrath's EAJA fee award is subject to offset, after which the Court recommends that the balance be remitted to his counsel, per McGrath's own wishes.

### III. RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that: (1) Plaintiff's Application for Attorney's Fees Under the Equal Access to Justice Act [Doc. No. 25] be **GRANTED** and (2) that Plaintiff be awarded $6,936.00 in fees under the EAJA.


Dated: October 1, 2012

                                                         s/*Steven E. Rau*
                                                         STEVEN E. RAU
                                                         United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **October 15, 2012** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.